AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

FILED by ___ D.C.

MAY 1 8 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No.  18-8234-BER |
| Michael Clarence Ornelas & Matthew Petruccelli ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 5, 2018 to present___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 U.S.C. 371 | Conspiracy to transport stolen property in interstate commerce. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert Herbster, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/18/18

_____
*Judge's signature*

City and state:        West Palm Beach, FL

Bruce E. Reinhart, US Magistrate
*Printed name and title*

**AFFIDAVIT OF**
**ROBERT M. HERBSTER, SPECIAL AGENT**
**FEDERAL BUREAU OF INVESTIGATION**

I, Robert M. Herbster, being duly sworn, do state and attest as follows:

I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I have been so employed since 2002. I am currently assigned to squad PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency. I have primarily investigated bank robberies, organized crime, cyber crime, interstate transportation of stolen property, and violent crimes against children violations, as well as others.  Based on my experience as a federal law enforcement officer, I have conducted investigations of, and have been instructed in investigative techniques concerning Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, USC, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

This affidavit is based upon my own personal knowledge of the facts and circumstances surrounding the investigation and information provided to me by other law enforcement officers regarding their review of tapes of consensually monitored telephone calls and meetings, as well as by a cooperating defendant. This affidavit does not purport to contain all the information known to me about this case, but addresses only that information necessary to support a finding of probable cause for the issuance of a criminal complaint charging MICHAEL CLARENCE ORNELAS and MATTHEW PETRUCCELLI, with Conspiracy to Commit Interstate Transportation of Stolen Property (ITSP), in violation of Title 18, United States Code, Section 371.

**PROBABLE CAUSE**

On January 9, 2018, a Cooperating Witness (hereinafter "CW") contacted the Palm Beach County Resident Agency of the FBI. The CW believed he was the target of a criminal investigation, or possibly linked to a criminal investigation against his associates, and wanted to speak with agents. CW wanted to come into the office and speak with agents and an Assistant United States Attorney.

On January 10, 2018, CW voluntarily came into the FBI office and met with agents and the Assistant United States Attorney.  CW was told that he was not being granted any immunity, nor any promises would be made to him about any potential criminal charges he could be facing if he elected to

1

speak about the jewelry store burglaries. CW was also not under arrest and free to stop the interview at anytime.

The CW advised he was part of a sophisticated burglary crew consisting of himself, MATTHEW PETRUCCELLI, born 1952, who resides in Davie, Florida, and MICHAEL ORNELAS, born 1963, who resides in Boynton Beach, Florida.  In 2002, ORNELAS and the CW were both convicted of interstate transportation of stolen property in the Eastern District of North Carolina (Criminal Case Number 01-CR-00292-002H). CW and ORNELAS began burglarizing jewelry stores again in 2011.  CW believed that PETRUCCELLI began committing the burglaries with them in 2012 or early 2013. CW identified the *modus operandi* of the group's actions during the burglaries as follows: ORNELAS, who is a locksmith by trade, would use his locksmith equipment to include drills, saws, tools, lock picking tools and various other items to be used to get into the businesses. PETRUCCELLI would rent a vehicle from the Fort Lauderdale area and CW would rent a van from Hertz in Palm Beach County. The van would be used to transport all the equipment along with CW and ORNELAS. The other car would be driven by PETRUCCELLI and would be used for surveillance during the canvass/surveillance of the potential victim business. The group would use GPS devices to coordinate a previously documented location of a jewelry store or potentially find a new location. The group would drive to the Middle and/or Northern Districts of Florida either the day before the burglary or the day of the burglary. CW and ORNELAS did not want to commit any burglaries in Palm Beach County, Florida or anywhere near where they lived. CW stated they would use the rental vehicles on each and every burglary. During the surveillance stage of the operation the group would sit inside the rental van/car and discuss the burglary plan to access the businesses. They would discuss contingency plans and any other topics to successfully complete the burglary without being caught.

CW explained the communication and electronic devices that they used before, during, and after their burglaries. The group never spoke on the telephone through normal means. Rather, they utilized an application on the phone called, "Silent Circle."  This application uses encrypted software to allow the users to send text messages and conduct voice calls without fear of anyone being able to monitor those communications. The application's software will also delete the text messages after a short period of time and again those text messages are unable to be recovered through any means of legal process. CW also identified another application called "Signal" which uses the same type of software to encrypt any communication between the parties. The group also uses a radio scanner that is able to detect other radio identification numbers that are emitted after a person activates a radio to talk

2

to another party. These types of radio systems are used by police agencies for the officers to be identified after they "key up" the microphone. CW stated this is a way to determine if anyone is following or conducting surveillance on the group. CW stated that on the night of the operation, CW would drive ORNELAS to the door of the victim's business and drop him off. ORNELAS would take the equipment needed to gain access to the adjoining business along with a two-way radio that he uses to communicate with CW and PETRUCCELLI. CW stated that PETRUCCELLI would wait in the other rental vehicle for security and surveillance of any police vehicles. CW stated on some occasions PETRUCCELLI would be called by ORNELAS to come to the victim's business and assist with gaining access to the safe.

CW stated that ORNELAS talked about stopping the jewelry store burglaries and targeting marijuana distribution businesses out of the state of Florida. ORNELAS talked specifically about a marijuana business in Chicago, IL and some in the state of California. ORNELAS, whose locksmith business includes the sale and installation of safes, had been solicited to sell a safe to one marijuana dispensary owner in Chicago and several in California. ORNELAS claimed that the business owner in Chicago needed a safe large enough to hold more than $700,000 in twenty dollar bills. ORNELAS thought this would be a good target because the business owner would never suspect him.

On or about February 5, 2018, CW participated in a consensually recorded meeting with ORNELAS and PETRUCCELLI in Pompano Beach, Florida.[1] During the meeting, they confirmed the location of the marijuana dispensary they intended to target, which was located at 5001 N. Clark Street, Chicago, IL 60640. An Internet search of the respective address revealed that Dispensary 33, a medical marijuana dispensary was located there. ORNELAS confirmed that the owner of that business had contacted him about acquiring a safe large enough to hold more than $700,000 in twenty dollar bills.

On or about February 21, 2018, CW participated in a consensually recorded meeting with ORNELAS and PETRUCCELLI in Davie, Florida. During the meeting, they discussed traveling to Chicago to conduct reconnaissance ahead of their intention to burglarize a marijuana dispensary. They discussed renting a vehicle for the reconnaissance trip; including how much money they would need for fuel, purchasing iPhones, and discussed the possibility of using a recreational vehicle to transport

---

[1] The CW has participated in numerous recorded conversations with the subjects. Because PETRUCCELLI is believed to have engaged the services of a lawyer in or about January 2018, the US Attorney's Office and FBI have created a "taint team" and have reassigned this investigation to agents and prosecutors who have not been exposed to any potential conversations that implicate PETRUCELLI'S representation by counsel.

the stolen property back to Florida. ORNELAS also mentioned that he would have to purchase a new saw.

On or about March 14, 2018, CW participated in a consensually recorded meeting with ORNELAS and PETRUCCELLI. CW initially met ORNELAS and the two of them met PETRUCCELLI at the Flashback Diner, located in Davie, Florida. Prior to the meeting with PETRUCCELLI, CW and ORNELAS placed their phones in airplane mode so they don't track together and ping off the same towers. During the meeting, they discussed looking for a jewelry store on the way up to Chicago when they go up for the marijuana dispensary, and they agreed that the jewelry store should not be in Florida. They also discussed purchasing a GPS, tablet, crowbar and saw.

During a consensually recorded meeting on March 20, 2018, CW, ORNELAS and PETRUCCELLI discussed things they needed to purchase in preparation for their heist. CW advised that he needed to purchase a cell phone, GPS, radio, iPad, and two to three batteries. PETRUCCELLI advised that he too would purchase a throw-away phone, and would rent a car for their travel to Chicago. PETRUCCELLI advised that he had "diamond grits" to remove the serial numbers from stones. ORNELAS advised that he purchased a $7,000 scope for $500, which he would use when breaking into the safe. ORNELAS also needed a rolling tool bag, extension cords, vice grips and snippers. They also discussed the need for a neutral storage unit to store tools because they believed law enforcement was on to ORNELAS. ORNELAS was concerned about having the surveillance equipment and burglary tools together.

On April 11, 2018, CW participated in a consensually recorded meeting with PETRUCCELLI. CW met PETRUCCELLI at the Flashback Diner in Davie, Florida. During the meeting they discussed leaving over the weekend to drive up to Chicago so that they would be there by Monday to start their reconnaissance on the marijuana dispensaries and jewelry stores. CW and PETRUCCELLI then departed to the Thrifty Car Rental, located at the Fort Lauderdale Airport, in order to rent a car for their reconnaissance trip to Chicago. They discussed renting a car with an Illinois license plate, as this would allow them to blend in with the local population and would not draw as much attention from local law enforcement had they rented a vehicle with an out of state license plate. Upon arrival at Thrifty, they searched the parking lot for a vehicle with an Illinois license plate, and found a 2016 Volkswagen Passat, bearing an Illinois plate: E906124, which they rented.

On April 12, 2018, CW, who was listed as the authorized driver of the rental car, provided consent for the installation of a vehicle tracker on the 2016 silver Volkswagen Passat, bearing Illinois license plate E906124.

On April 15, 2018, CW, ORNELAS, and PETRUCCELLI departed South Florida and began their travels to Chicago, Illinois to conduct their reconnaissance of potential marijuana dispensaries and jewelry stores they intended to burglarize.

On or about April 16, 2018, CW participated in a consensually recorded meeting with ORNELAS and PETRUCCELLI while they conducted their reconnaissance of various marijuana dispensaries and jewelry stores throughout the Chicago area and surrounding suburbs. During the recording, CW, ORNELAS, and PETRUCCELLI conducted surveillance on four (4) marijuana dispensaries and three (3) jewelry stores, which are as follows:

1. Dispensary 33, located at 5001 N. Clark Street, Chicago, Illinois 60640
2. Pharma Cannis, located at 1804 Maple Avenue, Evanston, Illinois 60201
3. Green House Group, LLC, located at 151 S. Pfingsten Road, Unit V, Deerfield, Illinois, 60015.
4. New Age Care, located at 2015 E. Euclid Avenue, Mt. Prospect, Illinois 60056
5. AM Lee Jeweler, located at 2778 Dundee Road, Northbrook, Illinois 60062
6. CY Fredrics, a jewelry store, located at 2719 Pfingston Road, Glen View, Illinois 60026
7. CY Fredrics, located at 600 Central Avenue, Unit 111, Highland Park, Illinois 60035.

The consensual recording, law enforcement surveillance and data obtained from the vehicle tracking device on the Volkswagen Passat confirmed each of the seven (7) locations noted above.

During the surveillance of the various locations, CW, ORNELAS, and PETRUCCELLI discussed and evaluated law enforcement traffic in those areas, civilian foot traffic, the structure of the buildings, parking surveillance, motion detectors, alarm systems, among various other potential pitfalls that might prevent them from breaking into the stores undetected. They also discussed the adjacent stores they would need to break into in order to gain access to the target stores. During this reconnaissance, they settled on two (2) marijuana dispensaries and one (1) jewelry store as possible options on where they would like to conduct their burglaries. The respective locations are as follows:

1. Green House Group, LLC, located at 151 S. Pfingsten Road, Unit V, Deerfield, Illinois, 60015.
2. New Age Care, located at 2015 E. Euclid Avenue, Mt. Prospect, Illinois 60056
3. CY Fredrics, located at 2719 Pfingston Road, Glen View, Illinois 60026

On or about April 17, 2018, CW participated in a consensually recorded meeting with ORNELAS and PETRUCCELLI, as they continued to conduct their reconnaissance of marijuana

dispensaries and jewelry stores throughout the Chicagoland area. In addition to the two marijuana dispensaries and one jewelry store from the previous day, they also conducted surveillance at Maribis of Chicago, another marijuana dispensary, located at 4570 S. Archer Avenue, Chicago, Illinois 60632. They then continued their reconnaissance of the Green House Group, LLC in Deerfield, New Age Care in Mt. Prospect, and CY Fredrics in Glen View, Illinois. Between surveillance conducted by law enforcement, along with information obtained from the vehicle tracker on the Volkswagen Passat, each of the four (4) locations noted above were confirmed.

In regards to their reconnaissance on April 17, 2018, of CY Fredrics Jewelers, located at 2719 Pfingston Road, Glen View, Illinois 60026, FBI agents observed both PETRUCCELLI and ORNELAS walking around the perimeter of the shopping plaza where CY Fredrics was located, and each of them entered the neighboring business on either side of CY Fredrics. ORNELAS entered Superior Optical, located at 2723 Pfingsten Road, Glenview, IL 60026 and PETRUCCELLI entered Burn Boot Camp, located at 2715 Pfingsten Road, Glenview, IL 60026. Shortly thereafter, PETRUCCELLI was observed entering CY Fredrics Jewelers. The purpose of making entry into those businesses was to determine what kind of locks, alarm systems, security cameras, and to determine the layout of the business as they would make entry into CY Fredrics through the adjoining wall. While inside CY Fredrics, PETRUCCELLI was able to view both safes, which were situated in the rear of the jewelry store. Furthermore, ORNELAS observed both safes through the front entrance of CY Fredrics and noted that these particular safes were John Tann safes, with an Underwriter Laboratory rating of TRTL rating 15. Identifying the types of safes is imperative to determine how long it would take to open and what kind of specialized drill bits and the necessary tools it would require to open the safe. ORNELAS stated that it would take him approximately 30 minutes to drill holes and break into the two safes.

CW, ORNELAS and PETRUCCELLI continued their reconnaissance of CY Fredrics into the evening to determine when CY Fredrics closed, determine who the employees were, what kind of vehicles they drove, as well as monitor the area for law enforcement presence. Well after CY Fredrics closed for the night, ORNELAS removed the cylinder off the lock from the rear door of Burn Boot Camp, and created a key so that they would have a key when they conducted the burglary of the jewelry store.

On May 11, 2018, CW confirmed that he, ORNELAS and PETRUCCELLI plan to depart South Florida for their return trip to Chicago in the early morning hours of Wednesday, May 16, 2018. The purpose of this trip is to burglarize CY Fredrics Jewelers, located at 2719 Pfingsten Road, Glenview, IL

60026, and to return to South Florida with the stolen jewelry. Upon their arrival, they will continue with additional reconnaissance of CY Fredrics Jewelers, as well as, reconnaissance on the two marijuana dispensaries; 1) Green House Group, LLC in Deerfield, IL and 2) New Age Care in Mt. Prospect, IL. Additionally, CW, ORNELAS, and PETRUCCELLI also intend on burglarizing one of the two marijuana dispensaries a day or two after they burglarize CY Fredrics. CW advised that they intend to burglarize CY Fredrics late into the evening on Saturday, May 19, 2018 and into the morning hours of May 20, 2018. The reason for this is because CY Fredrics is closed on Sundays, as is Burn Boot Camp.

CW advised the execution plan on the night of the intended burglary is as follows; ORNELAS will make entry into Burn Boot Camp using the key he made from their previous reconnaissance trip in April. Once inside, ORNELAS would determine the location of the alarm control panel for CY Fredrics. ORNELAS will then utilize the wall saw to cut a hole in the wall between Burn Boot Camp and CY Fredrics. During this time, CW and PETRUCCELLI will be in the rental vehicles in the vicinity of the jewelry store conducting counter-surveillance and monitoring radio traffic utilizing police scanners. CW, PETRUCCELLI and ORNELAS will be communicating using two way encrypted radios. After ORNELAS receives confirmation from CW and/or PETRUCCELLI that the area is clear, they will utilize a cell phone jamming device while ORNELAS makes entry into CY Fredrics to disable the alarm system and video surveillance. ORNELAS will then exit and either CW or PETRUCCELLI will pick up ORNELAS and wait approximately 30 minutes to monitor police scanners to ensure the alarm system did not notify law enforcement.

Once they determine it is safe to make entry again, ORNELAS will be dropped off in the vehicle containing the safe cracking equipment. Again, ORNELAS will make entry into the Burn Boot Camp utilizing the key he made. ORNELAS will then begin to make entry into both John Tann safes, which are located in the rear of CY Fredrics. During consensually recorded meetings with CW, ORNELAS estimated that it would take approximately 30 minutes to make entry into both safes. At that point, ORNELAS will load the jewelry from the safes into a bag while CW and PETRUCCELLI continue counter surveillance. Once ORNELAS is done, ORNELAS will be picked up and the stolen merchandise and equipment will be placed into the vehicle, and both vehicles will clear the area. CW advised that they will meet up away from where they conducted the burglary and ensure that the stolen merchandise is separate from the tools and equipment they used to break into the safes.

7

When departing Illinois for their trip back to South Florida, they will then transport the stolen merchandise in one of the rental vehicles, while another rental vehicle will contain all of their equipment and tools used during the burglary. Upon arrival back to South Florida, these items will be placed in a storage facility that PETRUCCELLI was to have obtained.

In the early morning hours of May 17, 2018, CW,  PETRUCCELLI and ORNELAS departed south Florida in a rental vehicle, destined for Chicago for the purpose of conducting the pre-planned burglaries. By early afternoon, CW reported the group was in Atlanta, Georgia.  As of Friday, May 18, 2018, the group had reached the Indiana-Illinois border.  This has been confirmed by a tracking device that CW is carrying.

Based upon the foregoing, Affiant asserts the above description of events establishes the essential facts constituting the offense charged in the criminal complaint and submit that there is probable cause to believe that MICHAEL CLARENCE ORNELAS and MATTHEW PETRUCCELLI, have committed the crime of conspiracy to commit Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Sections 2314 and 371.


FURTHER YOUR AFFIANT SAYETH NAUGHT.

ROBERT M. HERBSTER
Special Agent
Federal Bureau of Investigation



Sworn to me and subscribed before me this _18_ day of May, 2018 at West Palm Beach, Florida.

BRUCE E. REINHART
United States Magistrate Judge

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  **Michael Clarence Ornelas**

**Case No.**: _____

**Counts # 1:**

Conspiracy to transport stolen property in interstate commerce.

Title 18, United States Code, Sections 371

**\*Max. Penalty:**   5 Years Imprisonment; 1 Year Supervised Release; $250,000 Fine
and $100 Special Assessment.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  **Matthew Petruccelli**

**Case No.:** _____

**Counts # 1:**

Conspiracy to transport stolen property in interstate commerce.

Title 18, United States Code, Sections 371

**\*Max. Penalty:**   5 Years Imprisonment; 1 Year Supervised Release; $250,000 Fine
and $100 Special Assessment.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: *18-8234-BER*

UNITED STATES OF AMERICA

vs.

MICHAEL CLARENCE ORNELAS &
MATTHEW PETRUCCELLI,

Defendant.

_____/

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Northern Region of the United
States Attorney's Office prior to October 14, 2003? _____ Yes ___X___ No

2.    Did this matter originate from a matter pending in the Central Region of the United States
Attorney's Office prior to September 1, 2007? _____ Yes ___X___ No

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

BY:    _____

ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0287334
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 820-8711
Fax: (561)820-8777
Roger.stefin@usdoj.gov